IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

DARRYL D. JORDAN, JR.                                                              PLAINTIFF

VS.                                                         CIVIL ACTION NO. 5:16-cv-43-FKB

CAROLYN W. COLVIN, COMMISSIONER                                        DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Darryl D. Jordan, Jr., of the Commissioner of Social Security's final decision affirming his Notice of Disability Cessation, which ended Jordan's period of disability and Disability Insurance Benefits ("DIB"). In rendering this Memorandum Opinion and Order, the Court has carefully reviewed the Administrative Record [8] regarding Jordan's claims (including the administrative decision, the medical records, and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Brief [10], and Defendant's Brief [14]. The parties have consented to proceed before the undersigned United States Magistrate Judge, and the District Judge has entered an Order of Reference [15]. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the Commissioner's decision should be affirmed.

I. PROCEDURAL HISTORY

This proceeding is the appeal of the Social Security Administration's ("SSA") determination that Jordan was no longer "disabled" as of December 31, 2013. [8] at 277-279.[1]

---

1. Citations reflect the original pagination of the administrative record.

Jordan, who was born on March 8, 1967, had been receiving disability insurance benefits since the SSA's October 23, 2008, partially favorable decision found him disabled as of August 1, 2006. *Id.* at 271, 273.

Jordan first filed an application for a period of disability and disability benefits on June 28, 2005, alleging that he had been disabled since May 11, 2003. [8] at 10. After initial and reconsideration denials, the SSA issued, on October 23, 2008, a partially favorable decision concluding that Jordan had the severe impairments of diabetes, depressive disorder, pain disorder, and obesity. *Id.* at 262. In addition, the ALJ found that he had the severe impairment of "status post surgery on both arms" resulting from a May 2003 industrial accident that occurred while he was working as a boilermaker. *Id.* Specifically, Jordan fell while working and suffered radial head fractures in both elbows and a left proximal ulnar fracture, requiring surgery and months of follow-up care. *Id.* at 262, 266-267, 399. By June 2005, his fractures appeared to be healed, but there were some early degenerative changes. *Id.* at 12. Considering the evidence, the ALJ concluded that as of August 1, 2006, Jordan had a residual functional capacity for "less than the full range of even sedentary work as defined in 20 CFR 404.1567(a) due to a lack of ability to maintain concentration, persistence and pace or interact with others which results in an inability to meet the mental demands of any full-time work." *Id.* at 269. Thus, the ALJ found Jordan to be disabled and awarded benefits beginning August 1, 2006. *Id.* at 273.

On December 26, 2013, after conducting a continuing disability review, the SSA issued a Notice of Disability Cessation finding that Jordan's health had improved. *Id.* at 277. The Notice relayed that Jordan's disability would end as of December 31, 2013, and informed him that

benefits would be terminated the last day of February 2014. *Id.* at 277. A Disability Hearing Officer upheld the decision on reconsideration. *Id.* at 275-276; 292-302. Jordan requested a hearing before an ALJ, and, after a hearing, the ALJ issued a decision on July 2, 2015, affirming the cessation of benefits. *Id.* at 10-22. The Appeals Council denied his request for review on March 23, 2016, *id.* at 1, and this appeal followed.

## II. MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Jordan's records in their briefs, and the ALJs have provided thorough summaries in their decisions. Nevertheless, a review of the observations and evaluations of certain examiners will aid in the consideration of this case.

The most recent records consist of medical treatment notes from 2013 to 2014 and a consultative mental status evaluation from November 2013. *Id.* at 399-403, 423-501. Beginning in July 2013, Jordan sought treatment from Dr. Blaine Britt of the Britt Medical Group, Brookhaven, Mississippi. *Id.* at 423-501. Dr. Britt assessed that Jordan had type II diabetes, essential benign hypertension, mixed hyperlipidemia, unspecified backache, and panic disorder without agoraphobia. *Id.* at 444. At that time, the doctor noted that Jordan was six feet, one inch tall, and weighed two hundred fifty-seven pounds. *Id.* at 443. Dr. Britt prescribed a variety of medications to treat these conditions: pioglitazone, metformin, Lisinopril, Crestor, Lorcet, and Xanax. *Id.* at 444. Dr. Britt examined Jordan on eight occasions between July 2, 2013, and May 16, 2014. *Id.* at 426, 430, 434, 438, 442, 459, 463, and 467.

On January 21, 2014, Dr. Britt completed a disability report form and concluded that the following systems were normal: eyes, ears, nose, and throat; lungs; heart; vascular; abdomen;

˘3˘

genitourinary; neurological; and psychological/psychiatric. *Id.* at 423. Dr. Britt noted that Jordan's musculoskeletal system was abnormal. *Id.* Dr. Britt remarked that "[d]iabetes, cholesterol, [and] anxiety are all treated [with] medication. As long as [patient] is taking his meds, he should have no trouble [with] any of these. In regards to his back pain, he is treated [with] pain medication and we did make a neurosurgery referral." *Id.*

On February 7, 2014, Dr. Britt ordered MRIs of Jordan's right shoulder and lumbar spine. *Id.* at 483-485. The MRI of Jordan's right shoulder revealed a "partial tear of the supraspinatus tendon with intrasubstance fraying at the level of the conjoined tendon," a partial tear of the subscapularis tendon, and "[l]abral degeneration and tear of the anterior labrum and anterior superior labrum." *Id.* at 483. The MRI of his lumbar spine showed "[c]hanges of osteoarthritis with mild disc disease at L4-L5 and L5-S1." *Id.* at 485.

Finally, in May 2014, Dr. Britt authored a letter that stated that Jordan "is a patient of mine being treated for diabetes, high cholesterol, anxiety with panic attacks, hypertension, and chronic back and shoulder pain[.] His chronic back pain and his anxiety disorder prevent him from maintaining a full time job[.]" *Id.* at 458.

On November 26, 2013, Randy S. Burke, Ph.D., conducted a comprehensive mental status evaluation of Jordan at the request of the Office of Disability Determination Services. *Id.* at 399-403. Dr. Burke observed that Jordan's "posture was straight and his gait was slow but otherwise within normal limits." *Id.* at 399. He noted that there was no evidence of involuntary movements or invalidism, and that Jordan was very cooperative. *Id.* Dr. Burke concluded that Jordan "meets the diagnostic criteria for major depressive disorder, as well as an anxiety disorder not otherwise specified. The claimant's mood and anxiety symptoms are likely to have at least

some negative impact on his ability to function in normal work settings and interact with coworkers." *Id.* at 402. Burke further encouraged Jordan "to consider working with a mental health provider as he or she might be able to identify strategies to alleviate some of the claimant's mood, anxiety and pain symptoms." *Id.* Burke concluded that Jordan's "symptoms are likely to persist for the next 12 months" and that Jordan "is considered to have adequate capacity to independently manage any funds he may receive." *Id.*

### III. HEARING AND DECISION

In his July 2, 2015, decision, the ALJ evaluated Jordan's conditions using an eight-step evaluation process employed by the SSA to determine if a claimant continues to be disabled, as set forth in 20 C.F.R. § 404.1594(f).[2] The ALJ observed that through December 31, 2013,

---

2. In evaluating whether a disability continues, the ALJ is to engage in an eight-step sequential process, making the following determinations:

   (1)   Whether the claimant is presently engaging in substantial gainful activity (if so, the SSA will find disability to have ended)(see paragraph (d)(5) of this section).

   (2)   If not, whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in appendix 1 of this subpart (if so, a finding of disability will continue).

   (3)   If not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5)).

   (4)   If there has been medical improvement, it must be determined whether it is related to the claimant's ability to do work in accordance with paragraphs (b)(1) through (4) of this section; *i.e.*, whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is *not* related to the claimant's ability to do work, see step (5). If medical improvement *is* related to the claimant's ability to do work, see step (6).

Jordan had not engaged in substantial gainful activity. *Id.* at 13. He evaluated the medical evidence and found that Jordan had medically determinable impairments of effects of left arm surgery, effects of right shoulder partial tear, diabetes, hypertension, osteoarthritis of the lumbar

---

(5) If there has been no medical improvement (step (3)) or if the medical improvement is not related to the claimant's ability to work (step (4)), the SSA considers whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, the claimant's disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, the SSA will determine whether all of the claimant's current impairments in combination are severe. This determination will consider all of the claimant's current impairments and the impact of the combination of those impairments on the claimant's ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of the claimant's ability to do basic work activities, see step (7). When the evidence shows that all of the claimant's current impairments in combination do not significantly limit his/her physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, the claimant will no longer be considered to be disabled.

(7) If the claimant's impairment(s) is severe, the SSA will assess the claimant's current ability to do substantial gainful activity in accordance with § 404.1560. That is, the SSA will assess the claimant's residual functional capacity based on all his/her current impairments and consider whether the claimant can still do work he/she has done in the past. If the claimant can do such work, disability will be found to have ended.

(8) If the claimant is not able to do the work he/she has done in the past, the SSA will consider one final step. Given the residual functional capacity assessment and considering the claimant's age, education, and past work experience, can the claimant do other work? If so, disability will be found to have ended. If the claimant cannot, disability will be found to continue.

*See* 20 C.F.R. § 404.1594 (f).

spine, obesity, major depressive disorder, and anxiety disorder. *Id.* After comparing the medical and mental health evidence to the criteria of the Listings for certain fractures (§ 1.07), obesity (SSA Ruling 02-1p), and depression and anxiety (§§ 12.04 and 12.06), the ALJ concluded that Jordan's impairments did not meet or medically equal the severity of the Listings. *Id.* at 14. Rather, the ALJ determined that the medical evidence supported a finding that there had been a decrease in medical severity, or, in simpler terms, that Jordan had shown medical improvement since the 2008 decision finding him disabled. *Id.* at 15.[3]

In determining that Jordan had shown medical improvement, the ALJ pointed out that the medical record demonstrated that Jordan's gait and station were normal, and that he had normal movement in all extremities, even though he complained of pain. *Id.* Jordan reported that he could independently eat and bathe, drive and go to the store, although he also reported that he could not walk, bend his elbows, and had difficulty putting on clothes. *Id.* With regard to his mental abilities, Jordan reported that his medication helped him with his mood, and a consultative examiner found he could pay bills, manage money, and that his mental abilities were mostly intact. *Id.*

The ALJ observed that Jordan reported that his pain medication provided some relief from pain, and that his antidepressant helped his mood. *Id.* at 19. The ALJ stated that although Jordan denied being able to do housework or hobbies, he socialized some with friends and family, went to casinos, managed to fish, and could drive, go shopping, and pay bills. *Id.* The

---

3. Of note is that in June 2012, Jordan was involved in a collision while he was driving a tractor, which the ALJ described as a "medium exertion task." *Id.* at 15, 383-392. Jordan suffered cervical strain, lumbar strain, and a contusion to his left lower leg, but x-rays of his left leg, cervical spine, and lumbar spine did not reveal any fractures. *Id.* at 385, 390-391.

ALJ also noted that Jordan was driving a family tractor when he was involved in a collision, which suggested "that he may take greater part in the work of his family farm than just watching." *Id.*

Based on the medical records, the ALJ determined that Jordan's physical and mental condition had improved to the point where he could perform light work with certain limitations. *Id.* at 15. More specifically, the ALJ determined that Jordan had the residual functional capacity to perform light work, lift 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for 6 hours each in an 8 hour work day; occasionally stoop and climb ramps, stairs, ladders, ropes, and scaffolds; occasionally reach overhead with bilateral upper extremities; must avoid concentrated exposure to noise (with a noise intensity level no more than three as per the Selected Characteristics of Occupations), and hazards (including dangerous moving machinery and unprotected heights); could perform simple, routine repetitive tasks of unskilled work; maintain concentration and attention for two-hour blocks; could interact frequently with supervisors and co-workers and occasionally with the general public; and low stress work (with no fast paced production requirements, simple work-related decisions, with few or no changes in the work setting). *Id.* at 16.

The ALJ determined that Jordan is unable to perform his past relevant work as a boilermaker, which was classified as heavy, skilled work. *Id.* at 20. Because Jordan was born on March 8, 1967, he was considered a younger individual as of December 31, 2013. *Id.* The ALJ observed that Jordan had a high school education. *Id.* Considering Jordan's age, education, and the finding that he could perform light work with certain limitations, the ALJ determined that Jordan could perform a significant number of jobs in the national economy. *Id.* After

consulting with a vocational expert, the ALJ concluded that Jordan could perform the light, unskilled jobs of mail clerk, cleaner/housekeeper, and house sitter. Thus, the ALJ concluded that Jordan's disability ended as of December 31, 2013. *Id.* at 21.

## IV. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

## V. DISCUSSION OF THE ALLEGED ERRORS

## AND APPLICABLE LAW

Requesting that the Commissioner's decision be reversed, Plaintiff poses two questions:

1. Did the ALJ err by improperly discrediting the Plaintiff's complaints of back pain?

2. Did the ALJ properly evaluate the opinion of the claimant's treating physician?

[10] at 8.

### A. Did the ALJ err by improperly discrediting the Plaintiff's complaints of back pain?

Plaintiff argues that the ALJ erred by selectively picking and choosing evidence that supported his opinion, rather than considering all of the evidence. Jordan asserts that the ALJ relied in error on selective parts of a lumbar MRI to discount Jordan's complaints of back pain. Furthermore, Jordan argues that the ALJ failed to consider the combined effect of his medical impairments.

By statute, an ALJ is required to discuss the evidence offered in support of a claimant's claim for disability and explain why the claimant is found not to be disabled. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Nevertheless, "the ALJ is not always required to do an exhaustive point-by-point discussion." *Id.*

The undersigned has reviewed the medical evidence of record, which includes limited medical records from 2012 to 2015. A review of the ALJ's decision shows that the ALJ sufficiently discussed the evidence of record, including records predating Jordan's initial request for benefits in 2005, and he considered all of Jordan's impairments when reaching his decision. The ALJ states that he considered the "entire record," and his decision bears this out. The ALJ discussed Jordan's medical evidence and his hearing testimony, pointing out where medical

evidence supported Jordan's contentions, as well as the lack of medical evidence supporting other contentions. *Id.* at 12-20. The ALJ showed how, overall, the medical records support the conclusion that Jordan had shown medical improvement since the 2008 decision such that he could perform a limited range of light work.

Jordan argues that "the ALJ seemed to rely solely on selective findings in the MRI" to make a determination regarding the severity of Plaintiff's back pain. The ALJ, however, merely relied on the doctor's ultimate impression of the MRI of Jordan's lumbar spine, which was that the MRI showed "[c]hanges of osteorarthritis with mild disc disease at L4-L5 and L5-S1."[4] Although Jordan quotes other portions of the MRI report, he fails to show how any of them render the doctor's ultimate impression incorrect, and the ALJ's reliance on the doctor's ultimate impression was proper.

Further, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled. *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). In evaluating credibility, the ALJ is not required to give claimant's subjective testimony precedence over conflicting medical evidence. *Anthony v. Sullivan*, 954 F.2d 284, 295 (5th Cir. 1992). The MRI provides conflicting evidence that supports the ALJ's decision. To reach his decision, the ALJ looked at the medical evidence documenting the medical improvement and Jordan's relatively active lifestyle, which included, as of 2012, driving a tractor. Records from Dr. Britt's examinations also show that although Jordan complained of back pain, the doctor prescribed medication that helped him manage the pain. The doctor also noted that Jordan had normal motor strength and tone, gait and

---

4. The MRI was interpreted by Dr. Jani Purvis, a radiologist affiliated with King's Daughters

station, and movement of his extremities in July 2013, October 2013, November 2013, December 2013, February 2014, and May 2014. [8] at 428, 432, 436, 440, 444, 461, 465, and 469.

The ALJ also concluded that the lack of medical treatment after Jordan was awarded benefits in 2008 undermined Jordan's claim that all of his conditions had worsened since that time. *Id.* at 18. Supporting this conclusion is that the records before the Court only date back to June 2012 when Jordan received emergency room treatment resulting from the tractor collision. And there are no records of any medical treatment between June 2012 and July 2013, when Jordan initially sought treatment from Dr. Britt.

As discussed above, the ALJ went into great detail analyzing the medical record and setting forth records supporting his conclusions. Accordingly, substantial evidence supports the ALJ's decision on this issue, and this argument fails to provide a basis for reversal.

B. <u>Did the ALJ properly evaluate the opinion of the claimant's treating physician?</u>

Plaintiff argues that the ALJ failed to accord the proper weight to the opinion of Dr. Britt, his treating physician. Jordan contends that "[t]he Fifth Circuit has held that the treating physician's opinion is entitled to 'controlling weight.'" [10] at 7. Citing *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), Jordan argues that "an ALJ must consider six factors[5] [set forth in 20

---

Medical Center, Brookhaven, Mississippi.
5. *Newton* lists the following six factors:
   1. the physician's length of treatment of the claimant,
   2. the physician's frequency of examination,
   3. the nature and extent of the treatment relationship,
   4. the support of the physician's opinion afforded by the medical evidence of record,
   5. the consistency of the opinion with the record as a whole, and
   6. the specialization of the treating physician.
*Newton*, 209 F.3d at 456; *see* 20 C.F.R. § 404.1527(c)(previously codified at the time of *Newton*

C.F.R. § 404.1527] before declining to give any weight at all to the opinions of a treating doctor." *Id.*

The ALJ observed that in Dr. Britt's January 2015 assessment, the doctor "indicated that the claimant could sit for four hours of an eight-hour workday and stand/walk for one hour, lift and carry 10 to 20 pounds, and would frequently be expected to have pain severe enough to interfere with concentration and attention." [8] at 19. The ALJ concluded that this opinion should be given "little weight" because it was "not supported by objective clinical findings" but only referenced Jordan's "lumbar tenderness, elevated blood pressure, elevated LDL cholesterol and anxious appearance." *Id.* As another basis for discounting the opinion, the ALJ concluded that the report was "internally inconsistent," as the doctor had "marked no limitations in grasping or handling, but also indicated limitations of no pushing and pulling that would impact his ability to work." *Id.* at 19-20.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive." *Newton*, 209 F.3d at 455(internal citations and quotations omitted).

Jordan argues that *Newton* required the ALJ to explicitly address each of the six factors.

---

as § 404.1527(d)(2) with certain variations in the factors).

However, *Newton*'s holding is more limited than Plaintiff asserts, and its facts are not squarely in line with the circumstances here. In *Newton*, the Fifth Circuit reversed and remanded the case when the ALJ rejected the opinion of the claimant's treating specialist in favor of the opinion of a non-examining, non-specialty medical expert, without first considering the six factors. *Id.* at 458.

However, "[n]either the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form." *Wiltz v. Commissioner*, 412 F. Supp. 2d 601, 608 (E. D. Tex. 2005). Instead, "mindful of a general duty of deference to the Commissioner's decisions, reviewing courts should examine the substance of an ALJ's decision, rather than its form." *Id.; see also Grogan v. Colvin*, 2016 WL 4572240, *2-3 (S.D. Miss. July 18, 2016)(upholding ALJ's decision rejecting treating physician's opinion when ALJ did not specifically discuss each factor of 20 C.F.R. § 404.1527(c)(2)).

In this case, the ALJ did not wholly reject the treating physician's opinion; instead, he accorded the opinion "little weight." Furthermore, unlike *Newton*, the ALJ did not reject the treating physician's opinion in favor of that of a non-specialty, non-examining expert. Instead, the ALJ noted the lack of "objective clinical findings" supporting Dr. Britt's conclusions as to Jordan's limitations. Furthermore, the record contained contrary evidence from Dr. Britt, such as relatively normal physical examinations, that indicated that Jordan could work, if accommodations were made for his limitations.

Even so, while the ALJ did not specifically enumerate the six factors in his decision, he stated that he had considered the opinion evidence in accordance with the requirements of §

404.1527, in addition to certain Social Security Rulings. See [8] at 19. The opinion bears this out. In his opinion, the ALJ noted the relatively recent treatment relationship between Dr. Britt and Jordan, observed that Jordan had sought treatment from Dr. Britt since July 2013, and noted the inconsistencies between Dr. Britt's opinion and other record evidence. Further, while not noted by the ALJ, the Court observes that Dr. Britt listed his specialties as internal medicine and pediatrics, not orthopedics, neurosurgery, or radiology. *Id.* at 501.

In addition, the ALJ pointed to evidence within Dr. Britt's treatment notes that contradicted the picture of Jordan painted by him in the January 2015 Multiple Impairment Questionnaire. For instance, as of December 2013, Dr. Britt commented that Jordan was "doing well with no new complaints" with regard to both his anxiety/depression and his hypertension. [8] at 427. Although Jordan reported "arthralgias/joint pain and back pain," he also reported "no muscle aches, no muscle weakness, and no swelling in the extremities." *Id.* Dr. Britt observed that Jordan ambulated normally, had good judgment, normal memory, no hearing loss, normal heart rhythms, normal motor strength and tone, normal movement of all extremities, and no contractures, malalignment, tenderness or bony abnormalities as to his joints, bones, and muscles. *Id.* at 428. Dr. Britt observed normal gait and station, and normal curvature of his back. *Id.* Dr. Britt's assessment of Jordan was simply that he had "panic disorder without agoraphobia," "benign essential hypertension," "fatigue," and "diabetes mellitus without mention of complication, Type II or unspecified type, not stated as uncontrolled." *Id.*

The most recent treatment notes in the record, from May 2014, show Dr. Britt's assessment of Jordan had seemingly improved from that of December 2013. *Id.* at 460. The doctor's physical exam of Jordan was virtually unchanged, and other than cold symptoms,

Jordan reported no depression, no muscle aches, no muscle weakness, no arthralgias/joint pain, and no back pain. *Id.* at 460.

In sum, the ALJ engaged in a sufficiently detailed analysis that demonstrates that he considered the six factors, and he specified sufficient reasons for giving Dr. Britt's opinion little weight. Accordingly, the undersigned finds that Jordan has failed to meet his burden of establishing that the ALJ's decision fails to comply with proper legal standards, or is unsupported by substantial evidence.

## VI. CONCLUSION

For the reasons discussed above, the undersigned finds that the ALJ's decision that Jordan is no longer disabled is supported by substantial evidence. Therefore, the undersigned finds that the Commissioner's Decision should be upheld, Plaintiff's request for remand and/or reversal should be denied, and this matter should be dismissed with prejudice.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 23rd day of August, 2017.

                                         /s/ F. Keith Ball
                                      UNITED STATES MAGISTRATE JUDGE